FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 0 5 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

SID HENNING,

      Plaintiff,

 -against-

THE CITY OF NEW YORK, DETECTIVE RICHARD
HARE SHIELD #7256, DETECTIVE OSCAR
POLANCO SHIELD #672, DETECTIVE HUTTER,
LIEUTENANT COLON, ADA FRANK SANTARPIA,
and NEW YORK CITY POLICE DEPARTMENT,

      Defendants.
-------------------------------------------------------------------- X

09-CV-3998 (ARR) (LB)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

  Sid Henning ("plaintiff") brings this pro se action, pursuant to 42 U.S.C. § 1983, against the City of New York; Detectives Richard Hale, Oscar Polanco, and Hutter; Lieutenant Colon; Assistant District Attorney ("ADA") Frank Santarpia; and the New York City Police Department ("NYPD"). Plaintiff seeks to hold defendants liable for, inter alia, violations of his state and federal constitutional rights during events that occurred on October 17, 2007, and from March 24 to April 13, 2009, in Brooklyn, New York. Before the court is defendants' unopposed motion for summary judgment. For the reasons explained below, defendants' motion is granted.

## BACKGROUND[1]

  On January 22, 2007, during a home invasion in Brooklyn, two African American males robbed and assaulted a man ("the complaining victim") and burglarized his home. Defendant's Statement Pursuant to Local Civil Rule 56.1 ("Def. 56.1") ¶ 1. The complaining victim described one of the perpetrators as being between 25 and 30 years old, standing approximately

---

[1] The following facts are drawn from the Amended Complaint, plaintiff's deposition testimony, defendants' statement pursuant to Local Civil Rule 56.1, and documents submitted in support thereof.

1

six foot two inches tall, and weighing about 220 pounds. Id. ¶ 4; Decl. of Ryan G. Shaffer ("Shaffer Decl."), Ex. A. On the day of the robbery, the complaining victim reviewed hundreds of photos of individuals matching the description he gave of the perpetrators on the NYPD's photo manager system, but he did not identify anyone at that time. Def. 56.1 ¶¶ 5-6.

In March of 2007, plaintiff and Isaac Slaughter were taken into Brooklyn's 84th precinct following a physical altercation that took place at the Salvation Army. Am. Compl. at Pg. 1. After plaintiff was processed and awaiting transfer to central booking, Officer Polanco separately questioned plaintiff and Slaughter about robberies, burglaries, assaults, and drug activity in the area. Id. Officer Polanco indicated to plaintiff that Slaughter was a gang member. Id. Plaintiff said that he had recently moved to New York, that he was not a gang member, and that he was at the precinct for having fought with a man that was robbing elderly residents at the shelter. Id. Officer Polanco called plaintiff a liar and said that "one way or another he was going to get [plaintiff] and all of the rest of [them]." Id.

On March 29, 2007, Officer Polanco created a photo array in which he placed plaintiff, identified as "the subject," in position number "two," along with randomly selected photographs of five other men with relatively similar physical characteristics to plaintiff. Def. 56.1 ¶ 7; Shaffer Decl., Ex. E. He called the complaining victim to make an appointment to see the photo array, and, on April 13, 2007, the complaining victim positively identified plaintiff as a participant in the robbery. Def. 56.1 ¶ 8; Shaffer Decl., Ex. C, D. The record is silent as to how plaintiff originally became a suspect. Based on the identification, however, an "I-Card" was issued by the NYPD for the purpose of notifying other officers that plaintiff was wanted in connection with the robbery.[2] Def. 56.1 ¶ 10; Shaffer Decl., Ex. F.

---

[2] The NYPD issues I-cards, inter alia, "to give notice of persons sought for whom there is probable cause for arrest." United States v. Morgan, No. 09-cr-573, 2010 U.S. Dist. LEXIS 111120, at *14 n.11 (E.D.N.Y. June 22, 2010),

2

On October 17, 2007, plaintiff was stopped for an alleged transit offense. Def. 56.2 ¶ 11; Shaffer Decl., Ex. G; Am. Compl. at Pg. 1. After presenting identification, plaintiff was informed that he was wanted in Brooklyn. Pl. Dep. at 53. He was taken to the 161st Street transit station and released to Officers Hare and Evans of the 84th precinct. Id. at 53-54; Am. Comp. at Pg. 1. The officers escorted him to the 84th precinct, where the police held him overnight and refused to tell him why he was being held. Pl. Dep. at 64-65; Am. Comp. at Pg. 1.

On October 18, 2007, plaintiff was informed that he was going to be the subject of a lineup, but police did not provide a reason for the lineup. Am. Comp. at Pg. 1. Plaintiff told Officer Hare that he did not want to participate and that he wanted to speak with Legal Aid. Id. Officer Hare responded that, if he did not cooperate, plaintiff would be placed in jail until he did so. Id. Three to four hours later, Detective Hare told plaintiff that the lineup concerned a fistfight in which plaintiff was a named suspect, and plaintiff consented to the lineup. Id. at Pg. 2. Plaintiff was placed in a lineup with four other fillers. Id. Lieutenant Colon was allegedly present during the lineup procedure. Id. at Pg. 3.

After the lineup was completed, the police told plaintiff that he had been identified as a perpetrator in the January 22, 2007 robbery by the complaining witness, who had identified Isaac Slaughter as the other perpetrator. Id. at Pg. 2; Shaffer Decl., Ex. H at 77. Officer Hare asked if plaintiff knew Slaughter, and plaintiff responded that he had met him at the Salvation Army but did not know him intimately. Am. Compl. at Pg. 2; Pl. Dep. at 57. Plaintiff denied involvement in the robbery and said that he had been attending a work program in downtown Brooklyn at the time. Id. According to plaintiff, Officer Hare looked over the file and said that plaintiff did not fit the original description that the victim had provided police but that the case had been open too

---

adopted in relevant part, 2010 U.S. Dist. LEXIS 111128 (E.D.N.Y. Oct. 19, 2010). I-Card have been described as "investigation card[s] used by members of the [NYPD] to alert other members of probable cause to arrest a subject." People v. Jones, 899 N.Y.S.2d 62 (N.Y. Sup. Ct. 2009).

long, that "somebody's got to go to jail," and that that person would be plaintiff if plaintiff could not give him someone else. Id. at Pg. 3; Pl. Dep. at 77.

Plaintiff was arraigned on charges of robbery, burglary, unlawful imprisonment, and larceny. Id. He was indicted by grand jury on October 24, 2007. Id.; Def. 56.1 ¶ 18. On March 27, 2009, a pre-trial Wade and Dunaway hearing was held, at which time plaintiff unsuccessfully sought to have both the photo array and lineup suppressed. Def. 56.1 ¶¶ 18-19; Shaffer Decl., Exs. H at 88, L, M. Plaintiff's trial commenced on April 6, 2009, with ADA Santarpia representing the People. Def. 56.1 ¶¶ 20-21. At trial, the complaining victim testified that plaintiff was one of the individuals who robbed him at his residence. Id. ¶ 22; Shaffer Decl., Ex. N at 319. On April 13, 2009, the jury acquitted plaintiff of all charges. Am. Compl. at Pg. 3; Def. 56.1 ¶ 23.

Plaintiff commenced the instant action on July 10, 2009, and he amended his complaint on December 7, 2009. Dkt. No. 4-4 at 4; Am. Compl. at 5. Plaintiff asserts various state and federal claims, including false arrest and malicious prosecution. He states that his arrest and prosecution let to his eviction and caused him to lose irreplaceable personal and professional possessions. He seeks $10,000,000 in damages. Am. Compl. at 3, 5. Defendants moved for summary judgment on July 14, 2011. Dkt. Nos. 95, 102. Plaintiff did not file a response, and the motion was deemed fully briefed on November 8, 2011.

## DISCUSSION

The court liberally construes plaintiff's pro se complaint to assert § 1983 claims for false arrest and malicious prosecution under the Fourth and Fourteenth Amendments of the Constitution, as well as the analogous state law claims of false arrest, false imprisonment, and malicious prosecution. Plaintiff seeks to hold the City of New York liable under the principles

4

of Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). He also appears to bring several other pendent state law causes of action sounding in tort, including intentional infliction of emotional distress.[3]

Defendants have moved for summary judgment on the grounds that (1) there was probable cause to arrest plaintiff, (2) probable cause existed for plaintiff's prosecution, (3) the defendant police officers are entitled to qualified immunity, (4) ADA Santarpia is entitled to absolute immunity, (5) plaintiff cannot establish municipal liability, and (6) the NYPD is not a suable entity. They argue that the court should decline to exercise pendent jurisdiction over plaintiff's remaining state law claims.

I.  **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156

---

[3] Plaintiff's amended complaint also alleges, in conclusory fashion, violations of the First and Eighth Amendments of the Constitution. Because the facts, as alleged and testified to by plaintiff, provide no grounds for relief under those amendments, these claims are dismissed and require no further discussion.

5

(2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment against it, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing Anderson, 477 U.S. at 255).

## II. Defendant NYPD

As an initial matter, defendants correctly argue that the NYPD is not a suable entity. Governmental entities "may not be sued in an individual capacity absent express consent from the state," and the "the New York City Charter expressly mandates that 'actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency.'" Warheit v. City of New York, No. 02 Civ. 7345, 2006 U.S. Dist. LEXIS 58167, at *40 (S.D.N.Y. Aug. 15, 2006) (quoting N.Y. City Charter §396). The complaint is accordingly dismissed as against the NYPD.

## III. False Arrest and False Imprisonment

A claim for false arrest, whether brought pursuant to § 1983 or New York law, requires proof of the same four elements: (1) defendant intentionally confined plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the

confinement was not otherwise privileged. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Harris v. County of Nassau, 581 F.Supp.2d 351, 354-55 (E.D.N.Y. 2008); Broughton v. State, 37 N.Y.2d 451, 456 (1975). If probable cause exists at the time of arrest, the confinement is privileged. Jocks, 316 F.3d at 135. Thus, the existence of probable cause constitutes a complete defense to a false arrest claim. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999). It also precludes a false imprisonment claim. See Zanghi v. Incorporated Vill. Of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) ("[A] finding of probable cause will defeat [a New York] state tort claim[] . . . for false imprisonment."). Evaluating whether or not probable cause to arrest exists is an objective inquiry. See Whren v. United States, 517 U.S. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (quoting Scott v. United States, 436 U.S. 128, 138 (1978) (internal quotation marks omitted)).

Defendants argue that they are entitled to summary judgment on plaintiff's false arrest and false imprisonment claims because there was probable cause to arrest plaintiff. They argue that probable cause was established by the victim's identification of plaintiff as one of the participants in the robbery, which identification led to the issuance of an I-card stating that plaintiff was sought in connection with that crime. Plaintiff attempts to undermine the existence of probable cause by arguing that the photo array in which he was identified was unduly suggestive or otherwise problematic, insofar as there were some variations in the appearances of the men featured in that array. Am. Compl.; Pl. Dep. at 73-75. However, the state court rejected plaintiff's pretrial effort to suppress the photo array, and plaintiff proffers no new evidence showing that the procedure was improper. Nor does he show that the police were unreasonable

to rely on the photo identification, which the complaining witness made after reviewing hundreds of photographs without making an identification. In the absence of any such evidence, the identification of plaintiff as one of the perpetrators by the complaining witness provided sufficient probable cause to arrest plaintiff, and his claims for false arrest and false imprisonment are, consequently, properly dismissed. See Russo v. City of Bridgeport, 479 F.3d 196, 203-04 (2d Cir. 2007) (affirming grant of summary judgment on false arrest claim where positive identification by witness constituted probable cause); see also Alvarado v. City of New York, 453 Fed. Appx. 56, 58 (2d Cir. 2011) (concluding that identification of plaintiff in photo array and lineup established probable cause for arrest).

### IV. Malicious Prosecution

The existence of probable cause also bars plaintiff's § 1983 and state law claims for malicious prosecution. See Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (stating that, to sustain a claim for malicious prosecution pursuant to § 1983 and New York law, a plaintiff must show, inter alia, that there lacked probable cause to commence the proceeding); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). "[I]ndictment by a grand jury creates a presumption of probable cause," which may be rebutted "only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello, 612 F.3d at 162 (citations and internal quotation marks omitted). As discussed above, the police had probable cause to arrest defendant based on his being identified as a perpetrator in the photo array. The complaining victim also identified plaintiff in a lineup, and he was indicted by grand jury. Plaintiff asserts that the lineup, like the photo array, was conducted in a suggestive manner, and he finds fault with purported inconsistencies in various officers' testimony regarding the lineup and how it occurred. See Pl.

Dep. at 71-73, 87-88. However, the state trial court previously rejected plaintiff's attempt to suppress the lineup, and the alleged inconsistencies with which plaintiff takes issue fall short of demonstrating fraud, perjury, or bad faith. Defendants are therefore entitled to summary judgment on plaintiff's malicious prosecution claims.

## V. Qualified Immunity, Absolute Immunity, and Municipal Liability

Defendants argue that, even if sufficient probable cause were lacking to arrest and prosecute plaintiff, defendant police officers and ADA Santarpia would nonetheless entitled to summary judgment on qualified or absolute immunity grounds. Defendants also argue that plaintiff has failed to state any cognizable claim supporting municipal liability against the City of New York. See Monell, 436 U.S. at 694. Because the court has already found that defendants are otherwise entitled to summary judgment on plaintiff's constitutional claims and their state law counterparts, it need not reach these alternative arguments.

## VI. Remaining State Law Claims

The exercise of pendent jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Where all federal claims have been dismissed before trial, pendent state law claims should be dismissed without prejudice and left for resolution by the state courts. See Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases); 28 U.S.C. §1367(c)(3). Because the court has dismissed plaintiff's federal law claims, it declines to exercise supplemental jurisdiction over any remaining state law claims that plaintiff seeks to bring.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state

law claims and dismisses those claims without prejudice. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: July 5, 2011
Brooklyn, New York

SERVICE LIST:

**Plaintiff:**

Sid Henning
# 10-A-5240
Queensboro Correctional Facility
47-04 Van Dam Street
Long Island City, NY 11101-3081

Sid Henning
Willow Men's Shelter
781 E. 135th Street
Bronx, New York 10454